**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2289
_____

STEVEN J. HAYES,
Appellant

v.

ROBERT GILMORE, Facility Manager SCI Greene; DOCTOR PILLAI, Treating
Psychiatrist SCI Greene; EARL BAKER, Registered Nurse SCI Greene; MAJOR
CORO, Unit Major, SCI Greene; DAN KARPENCY, Registered Nurse SCI Greene;
PSYCHOLOGICAL SERVICES SPECIALIST LINDSEY, Treating Psychological SCI
Greene; SHELLY MANKEY, Unit Manager SCI Greene; ROBERT MARSH, Chief
Psychologist Central Office; ADAM SEDLOCK, Treating Psychologist SCI Greene;
TRACY SHAWLEY, Grievance Officer SCI Greene; LIEUTENANT STICKLES, Unit
Brass SCI Greene; DORINA VARNER, Chief Grievance Officer Central Office;
PSYCHIATRIC SERVICES SPECIALIST WAINE, Treating Psychiatric SCI Greene;
JOHN/JANE DOES to be named after review of discovery documents. All named
defendants sued in both individual and official capacity
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:17-cv-01327)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 27, 2020

Before: JORDAN, BIBAS and PHIPPS, Circuit Judges

(Opinion filed: February 4, 2020)

_____

OPINION[*]

_____

PER CURIAM

Steven Hayes, a prisoner proceeding pro se, appeals the District Court's order granting Defendants' motions to dismiss his complaint. For the reasons detailed below, we will affirm in part and vacate and remand in part.

I.

Hayes brought this action under 42 U.S.C. § 1983 against several staff members at SCI-Greene, and one non-employee psychiatrist, asserting claims for deliberate indifference to his mental health needs and for failure to protect him from attempting to commit suicide. Hayes alleged the following. After he was denied permission to call his attorney and threatened to commit suicide, he was left alone in his cell in the Diversionary Treatment Unit ("DTU"),[1] where he intentionally cut his wrist by using a broken stainless steel toilet paper tube, and wrote "no more punishment" in his own blood on the wall. Hayes refers to this incident as his first suicide attempt. When staff members discovered Hayes's first suicide attempt, he was brought to a medical triage room, where Defendant Waine, a psychological service specialist, briefly evaluated him.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1]DTU provides mental health care and secure housing for inmates suffering from a mental illness.

2

Defendant Waine told Hayes he would check on the availability of a phone call to Hayes's attorney, and would also check on the status of psychotropic medication Hayes had requested. Defendant Lt. Stickles was present in the triage room. As a nurse dressed Hayes's wrist wound, Hayes stated repeatedly, "you're lucky I don't have a razor."

Defendant Stickles told Hayes he would be returned to his cell because no Psychiatric Observation Cells ("POCs") were available. On the way back to his cell, Hayes saw Defendant Waine in the hallway, and Waine told him that he had used his allotted calls for the month.

Despite Hayes's first suicide attempt, and his comments about a razor, he was not placed on a razor restriction, and was placed back in his cell, with his bloody message still on the wall. Defendant Waine later spoke to Hayes at his cell for two minutes. Hayes was clearly anxious from not being able to place his call and not receiving his medication. Defendant Waine left, again promising to check on those issues.

When Hayes was given his mail, he requested a razor and was given one. He broke off the front guard of the razor, and cut his left arm, which bled heavily and then slowed down. He cut three or four more times before realizing he needed to remove the blade completely to accomplish deeper cuts. However, his plans were foiled when a corrections officer arrived and Hayes realized that if he did not hand over the razor, he would be maced before he could successfully kill himself. He was taken for medical treatment, and then spent six days in a bare cell (on Defendant Dr. Pillai's orders), with no psychological treatment or medication.

3

In response to Hayes's complaint, both the employee Defendants and Defendant Pillai filed motions to dismiss for failure to state a claim. The Magistrate Judge recommended that the motions be granted and that Hayes's complaint be dismissed. The District Court agreed, over Hayes's objections. Hayes timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's decision to grant a motion to dismiss. See Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). Dismissal is appropriate if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When considering motions to dismiss, we must accept all allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-movant. See Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

## III.

The District Court did not err in dismissing the claims against Defendants Gilmore, Shawley, Varner, and Marsh for lack of personal involvement. Personal involvement "can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Additionally, "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." Id. With regard to these Defendants, Hayes simply made conclusory statements regarding their culpability, and

4

failed to allege facts demonstrating the necessary personal involvement in the underlying unconstitutional conduct. Additionally, although Hayes alleged that some of these Defendants denied Hayes's grievances, such actions do not establish personal involvement. Id. at 1208. In any event, Hayes has no freestanding claim based on the denial of his grievances. See Burnside v. Moser, 138 F. App'x 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process.") (citation omitted); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

The District Court properly dismissed the deliberate-indifference claims against Defendants Lindsey, Pillai, Baker, and Karpency. The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009) (citations omitted). Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners. See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment. See Estelle, 429 U.S. at 105-06. Although Defendants concede that Hayes's mental health needs were serious, they argue that their

5

motions to dismiss were properly granted because Hayes did not state plausible claims of deliberate indifference.

Hayes alleged that Lindsey came to his cell before the first suicide attempt, told Hayes she would see what she could do regarding Hayes's request call to his attorney, and then left him alone for 45 minutes in his DTU cell, despites Hayes's threats to commit suicide. These allegations do not amount to recklessness or deliberate indifference but rather, at most, possible negligence, which is insufficient for an Eighth Amendment violation. See Id.; see also Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

As to Defendant Pillai (a contracted psychiatrist at SCI-Greene), Hayes alleged that after his second suicide attempt, Pillai disregarded prison policy by placing him in a bare cell with a safety blanket for several days and preventing him from leaving his cell, which resulted in an absence of psychiatric consultation or treatment during those days. This contention is also insufficient to demonstrate deliberate indifference. See Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) ("[W]e presume that the treatment of a prisoner is proper absent [an allegation] that it violates professional standards of care.") (citation omitted). Hayes failed to allege this treatment decision fell below any professional standards of care. Rather, Hayes's allegations against Defendant Pillai

6

amount to a disagreement in treatment, which is not an actionable constitutional violation. See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Relatedly, Hayes's claims against Defendants Baker and Karpency, for following Defendant Pillai's instructions and moving Hayes to a bare cell, failed to state a claim.

Similarly, Hayes's failure-to-protect claims against Defendants Lindsey, Pillai, Baker, and Karpency were insufficient because such claims require a showing a deliberate indifference. Cf. Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) ("To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.") (citations omitted).

However, as to Defendants Stickles, Waine, Sedlock, Mankey, and Caro, we conclude that Hayes did state deliberate-indifference and failure-to-protect claims. He alleged that these Defendants were aware of his first suicide attempt, but allowed him to be returned to his DTU cell, where his bloody writing still adorned the wall, without a razor restriction in place. All of this despite Hayes's admonitions after his first suicide attempt earlier in the day that they were lucky he did not have a razor. These allegations, accepted as true, meet the standard. These alleged actions and inactions by Defendants Stickles, Waine, Sedlock, Mankey, and Caro can fairly be described as reckless to a

7

degree prohibited by the Cruel and Unusual Punishments Clause of the Eighth Amendment.  <u>Whitley</u>, 475 U.S. at 319.

For these reasons, we will affirm in part and vacate in part the judgment of the District Court and will remand for further proceedings.[2]

---

[2] We make no comment as to the defenses raised in the District Court of failure to exhaust administrative remedies and qualified immunity, which were not addressed by District Court and neither raised nor briefed in this Court.